This case is 25-8055, United States v. Ostertag. May it please the Court, Parent Rangeau on behalf of the appellant George Ostertag. This case involves the question of whether the roadside deployment of a drug detection dog constitutes a Fourth Amendment search under the Supreme Court's property-based and reasonable expectation of privacy tests. Under either test, the deployment of canine Becky around Mr. Ostertag's car was a search. I plan to start with our argument under cabias. Canine Becky's deployment constitutes a search under Illinois' v. Cabias because her sniff is capable of detecting lawful activity, namely the possession of non-contraband substances that smell the same as their illegal counterparts. Because she can alert to non-contraband, her deployment invades drivers' reasonable expectations of privacy in the lawful possession and transportation of these substances in their vehicles. Almost all police conduct requires a It depends on the nature of the intrusion, but for risks, you need reasonable suspicion, a search of a car, you need probable cause, search of a house, you need probable cause and a search warrant. So would this mean that a drug dog can't be used in Colorado? No, Your Honor. Whether something is a search and whether a search is reasonable, these are questions that depend on federal law and that's why we've focused on the federal legalization of hemp and other federal legalization of these substances. So no, it doesn't turn on state law, just to be clear. So our dog sniff cases are pretty categorical. And, you know, the rule you're proposing, you know, basically, explain to me how to distinguish our Tenth Circuit precedent on that. And it seems like your position would be that a drug, unless dogs can be sniffed or trained to tell the difference between hemp and marijuana and methamphetamine and its ingredients, it seems like they're like, at least drug sniffing would be out the window. So I wanted, there are two parts to that question. First, we're not saying that drug dogs can't ever be used. We're saying that all we're asking is whether their use constitutes a search and thus implicates any part of the Fourth Amendment. Right now, under Cabayas, there's a narrow carve-out that they don't because they don't reveal the presence of non-contraband. And carve-out, excuse me, Cabayas is a very narrow carve-out. And we're saying because canine Becky doesn't fit in that carve-out anymore, she can detect lawful substances. And so she doesn't fit into that narrow carve-out. And so her sniffs implicate the Fourth Amendment. That could, this Court could. Is that because she touched the car or? Oh, that's a, sorry, that's a separate. That's your Jones argument. Yes, that's our Jones argument. So this one is just about what she is capable of detecting. And because she's capable of detecting non-contraband, under Cabayas, a plain reading of Cabayas, she doesn't fit into that narrow carve-out. And so the officers need some suspicion. You know, this Court doesn't have to decide this question in this case, but they either need reasonable suspicion or probable cause because her sniff is a search under the Fourth Amendment, under a plain reading of Cabayas. So, let me ask you this. So, I mean, I guess if we had an expert drug dog handler, they would probably agree that any dog is capable of a false positive. Is that fair? Yeah. I mean, so all dogs are capable of alerting to non-contraband. No. I'm sure they are. If it's a false positive, if they alert and there's nothing there, that's a false positive. And you've then conducted a search of someone's legal items. Let me explain what I mean. A dog that is giving a false positive is still only trained to detect contraband. It's making a mistake. And that's kind of the probable cause inquiry, is we know that sometimes they make mistakes. And that's okay because probable cause only requires a fair probability. But in K-9 Becky's case, she's actually trained because she can't differentiate between these smells. She's actually trained and therefore designed to detect non-contraband. Unlike the dog who is only trained to detect contraband and makes a mistake, she is actually trained to detect non-contraband. And thus she doesn't fall into Tobias's narrow carve-out. Was there any evidence that dogs can be trained to alert to marijuana but not to hemp? Oh, yes.  Detective, or excuse me, I keep doing that. Kenneth Ferton testified that he, in his study, dogs could be proofed off of hemp and that it's possible. But on this record, K-9 Becky was not proofed off of hemp. And the district court found she can't distinguish between those smells. So that's actually a good question for whether there's a slippery slope here. I think the answer is no because dogs probably can be trained to differentiate. It's just that K-9 Becky was not. What about fentanyl? My, you know, I've known people who were prescribed fentanyl for cancer patients and stuff. And they possessed it legally. Presumably. Can a dog be? Was there any evidence about whether a dog could be trained off of prescription fentanyl? Not in this case. So in this case, the government conceded that K-9 Becky can't differentiate between the two. But it seems plausible to me on a different record, another dog potentially could be, depending on the quantities in the prescription versus, you know, the pills that people possess illegally. I think that that record could be made, but it wasn't here. And K-9 Becky, she cannot distinguish between the two. Okay, so what about, there is some testimony based on handler experience in this case that the handler justified that he had extensive experience and that he'd never seen a dog alert to a legal substance. So the district court didn't rely on those findings. Or excuse me, it didn't rely on that testimony. And it didn't find that it's completely impossible, or you know, it didn't say there's almost zero likelihood. And so I don't think that's a finding this court should make. But also, I think that testimony is itself pretty useless. Because the officers didn't testify that they actually had been looking for that type of material. They, the record evidence says that hemp looks very similar to marijuana, if not identical. And so when they say we never found hemp, well, okay, they don't test it at the roadside. And so who really knows? And hemp was only legal for three years out of the 31 and 10 year long careers of these two that testified they'd never found it. So I don't know, that doesn't say very much. So the district court didn't find that. And I don't think this court should in the appellate posture either. When the dog alerted, we don't know what it was alerting to. Whether it was marijuana or meth or fentanyl or something else, do we? It alerts. Yeah, I think that's actually what makes it a search under Kylo. Because the dog can't say what it is smelling. And it can't differentiate and say, okay, this one's definitely contraband. It can't tell it. And so that was the same as the thermal imager in Kylo. The officers didn't know whether it was picking up the lady taking her nightly sauna or a marijuana grow operation. They had to make an additional guess. That's true here too. The officers have to make a guess. And it's still the fact that she can do it, just like the thermal imager, can not differentiate and can detect lawful activity. That's what makes it a search. So I think that actually contributes to why this is a search. Turning to, oh, excuse me, did someone? Yeah, why don't you tie it to Jones? Okay. So our second argument is that K-9 Becky, her sniff was a search because she jumped on the car and therefore trespassed on a constitutionally protected effect under Jones for the purpose of gathering information. The district court, we think, correctly resolved this issue and found that her jumping on the car was a Fourth Amendment search under the court's trespass test. So each of Jones' elements are met here. There was a physical trespass on a constitutionally protected effect for the purpose of gaining information. A car is indisputably a constitutionally protected effect, and we know that from Jones. There was a physical trespass. K-9 Becky jumped on the car and she scratched it. Jumping alone would be sufficient under Jones. Jones specifically says we don't need damage in order to find a trespass. It was volitional, non-incidental, and uninvited. But here we have damage, and that confirms both that there was a trespass and it also distinguishes this case from others where there's fleeting contact. Didn't the district court, though, find that the doc had alerted before? Yes. She touched the car. Doesn't that alter the trespass? In other words, do we have to buy your cabalist argument first and then then we get to the Jones argument? They're linked. So let me be clear. So the cabalist argument is completely separate. So her entire deployment under cabalist, regardless of whether she alerted, was a search. Then, with respect to our trespass argument, you're right that if you agree with the district court that she alerted before she jumped on the car, you don't need to reach our trespass argument. And that's true. So but you would still need to reach our cabalist argument because it's completely separate and not affected by the alert. Let me ask you a question about jumping on the car in and of itself. It seems like the cases where the car has been touched and that there's been a trespass, that the touching was part of the sniff, i.e. the dog had to touch the car in order to get the good sniff. Do we have any evidence here that the dog's touching of the car was more than just excitement, that it had to be up touching the car to get the evidence? Yep. The district court found, as a matter of fact, that it did jump up. She jumped up because she's short and needs to get higher to smell. And it found that she actually gained information from that because she was then did her final indication. So we have findings of the government. How about this? If the dog had jumped up and not touched the car? If it just went like this? Yeah. Well, it didn't touch the car. So there's no trespass. Okay. Yeah. But if it touches the car for purpose of gaining information, then there's a trespass. And it's pretty, it's a simple test. So the dog, if it doesn't get her, if it doesn't actually touch the car, that's fine. That's what Jones requires. So the government could get a bigger dog. It could train her not to jump up on it. These are pretty simple things. So... Dogs are like kids. Yeah. Yeah. I think I will save my time for rebuttal. Okay. The court doesn't have further questions. Thank you. May it please the court. My name is Christine Martins, and I represent the United States. So the United States is asking that this court affirm the district court's denial of Mr. Ostertag's motion to suppress. And as to the dog issue, there's really three questions. And we're asking this court to hold fast and that a sniff is not a search to affirm the district court's determination that Becky alerted before the dog was found. She touched the car and only if it reaches the trespass issue to hold that touching the car was not a trespass within the meaning of the Fourth Amendment. I think our sniff issue is probably one of the most important issues out of the three. So I'll start there. And there's really two primary reasons that the sniff is not a search. First, the United States Supreme Court said so in Brightline cases. And second, the legal landscape and the practical realities have not changed such that this court should do anything other than apply those Brightline cases. Now, as I understand Mr. Ostertag's argument, he's asserting that because Becky is capable of alerting to lawfully possessed hemp, then there's essentially a reasonable expectation of privacy in the order of THC. But I think that that argument that focuses on the mere capability of the dog, the mere possibility of such an alert, leads to absurd results. And I also think that this speaks directly to the reply in which Mr. Ostertag argues that we have conflated both us, the district court, and the Seventh Circuit in Plancart have conflated the search question with that question of the fallibility of dogs. But it makes good sense when we're exploring the reasonable expectation of privacy to talk about the success rate of dogs. And the logical fallacy here has to do with that focus on the mere possibility as creating that reasonable expectation of privacy. And I think there's an example in this record that drives the point home. The government's expert witness at page 25 in volume 2 testified that as a private individual engaged in training drug dogs, he has a DEA license to possess all of the target odors. So he has a license to possess methamphetamine, heroin, and cocaine. And I don't think anybody would argue that the mere possibility of the lawful possession of those substances creates some sort of reasonable expectation of privacy in the odors of those substances. And we would say, I think in response to such an argument, that the possibility of coming across that lawfully possessed substance doesn't convert it from contraband to non-contraband. And that the possibility of finding a licensed dog handler in a roadside stop is vanishingly small. So there's no reasonable expectation of privacy. But that's the logical link here that we get to when we start talking about those probabilities. And that's why it makes sense for the district court and for the Seventh Circuit in Plancart to start talking about those error rates in dogs. And the Fourth Amendment's forgiveness for the error rates in dogs is not conflation of the probable cause inquiry with the search inquiry. It's recognition of the real life circumstances that we're working with on the ground. Simply stated, the legalization of hemp, though hemp contains THC, does not create a reasonable expectation of privacy in the smell of THC or in marijuana. Marijuana still remains fundamentally contraband. So because marijuana remains fundamentally contraband, just as methamphetamine, heroin, cocaine, and fentanyl in the context of a roadside stop, those things are all fundamentally contraband. And Judge Carson gave the example of the lawful possession of fentanyl by someone to whom it's prescribed. Now, Rob Havis, the government's expert witness, the second time that he testified towards the end of the transcripts, I don't recall the page number off the top of my head, but I do believe it's cited in our brief. He testified that when they were training dogs on fentanyl, that they didn't use the prescription grade things like patches and lollipops because the experts told them that those doses were so small, the dogs would never alert to them. And consistent with that, the law enforcement witnesses in this case testified that they had never seen any of those lawfully possessed substances in the field. So, and I think that bears out here also with hemp, because I think that hemp is probably the more realistic example where you might find a lawfully possessed piece of hemp in the field, but even the record here shows that the odds of that are extraordinarily small. The government's witness, Dr. Ken Furton, testified about his small-scale study that had not yet been peer-reviewed and finding that it was possible to proof drug dogs off of hemp. But in that study, only about half of drug dogs showed any interest in or alerted to. He did not differentiate between interest and an alert. There was plenty of testimony about interest being different than an alert, but only about half of them would show interest in or alert to hemp. But that was not hemp products. It was only the bud of the hemp plant itself. And I think that it's worthwhile in noting, that's not commonly how folks possess hemp, is the bud itself. And it's basically indistinguishable from the part of the marijuana plant that smoked. So I think for perspective, it's helpful to think that if there was a hemp bud on the passenger seat of the car during a traffic stop in plain view, that would be probable cause to search the car, because it's visually essentially indistinguishable from marijuana and the portion of the plant that smoked. But even so, in that very narrow circumstance, again, all of the law enforcement witnesses in this case testified that they'd never seen such a thing in the field. What do our cases require for finding of reliability? I hear you saying, well, we don't expect 100%, no false positives, but what's deemed a reliably trained dog in this circuit? Certainly, Your Honor. So first and foremost, the certification is the gold standard for reliability. And so courts are loathe to get into a statistical analysis of the drug dog's field performance for a variety of reasons. And that's because residual odor. There is plenty of testimony in this record about how residual odor can work. It means all the dog can tell you is it smells the odor of contraband, not the quantity, placement, or even if the contraband has been someplace and gone. Think about stepping onto an elevator and smelling someone's strong cologne, even though they're not in the elevator. That's how it works for the dog. So the dog may alert in the field and spell the odor of contraband, even though it's never located due to a poor search or the fact that the contraband has been moved. So that field data is not great. And we acknowledge that in Ludwig. But in Ludwig, even looking at the field data, this court said 58% was more than good enough. Now, in this case, the defense undertook a extensive evidentiary hearing into the reliability of canine Becky. And it was five days where we looked at 13 traffic stops. And out of those 13 traffic stops, five of them resulted in no seizure of a measurable quantity of drugs, which puts Becky's field performance at approximately 61%, which is above what this court said was acceptable in Ludwig. But I think it's also fair to point out, on Becky's very first deployment, Trooper Martinez did not call the alert. And later at the hearing, he testified that he failed his dog. He read her wrong. And reviewing that later, he believed that she had, in fact, alerted. And Mr. Trooper Martinez is a relatively inexperienced canine officer also in the course of this evidence. So when that man was pulled out of the car at that traffic stop, he was pulled out of the car because he had an arrest warrant. And he was searched incident to arrest. And there was drug paraphernalia on his person. So I don't know that it's even fair to say that that stop didn't result in something seizable with a clear source of drug odor. And if you don't count that stop as a failure, then Becky's field performance is 70-ish percent. But anyway, she's always passed certification and even double blind testing post Mr. Ostertag's stop with the Wyoming High Patrol. So there's really no suggestion that she's not accurate, more than accurate under this court's case law, both including Harris and Ludwig. Well, in your recitation about the hemp and the analysis that your experts gave, are they saying that the incidence of hemp in a stop is sufficiently rare that the alert is going to be to marijuana? Yeah, I think that's a fair way to summarize it, Your Honor. All right. And at least to the point of 58 percent? No. In terms of seizable drug quantity? Yes. I think so. Well, again, accuracy for the canine, you really can't impugn her accuracy for the failure of the officers to find the contraband because of that residual odor issue. And then in terms of the hemp, again, all of the law enforcement witnesses here testified that they had never found lawfully possessed hemp after a dog's alert, especially when you get into the testimony of Rob Havis and Trooper Bracken having worked with many dogs. It really covers more than just canine Becky as practical experience. And so, Your Honors, I think that finding essentially a reasonable expectation of privacy in a odor of a controlled substance where we can find a lawful exception to the substance's possession doesn't convert it to non-contraband. And I think that such a rule would lead to absurd results. If there are no further questions on the Cabayas issue, I would like to briefly address the Jones issue. And I think that there's a similar argument when it comes to Jones. I think that really the best case for the government here is Felmy out of the Sixth Circuit. There, the Sixth Circuit Court of Appeals undertook a very detailed and thoughtful analysis of how this Jones trespass issue really should work. And at bottom, any technical trespass amounting to a Fourth Amendment violation, again, produces absurd results. In Felmy, what happened was the officer had his drug dog and was running the drug dog around the vehicle. And this is one of those drug dogs where the officer taps to ask the dog to sniff in certain locations. So in doing so, he tapped at the open window of the passenger, or excuse me, driver's side of the vehicle. The dog puts its paws on the sill, sniffs around, doesn't alert. They go around to the other side of the vehicle, do the same thing. The dog sniffs, leans in a little bit, and then gives an alert. So her nose actually breaks the plane into the cab of the vehicle and she's got her paws up on sort of the sill of the door. Now, in examining those circumstances, the Sixth Circuit in Felmy said that this was incidental to her sniff and it didn't make this conduct into a Fourth Amendment violation. And it went through the problems with any technical trespass amounting to a Fourth Amendment search. Mainly that the placement of the contraband, the size of the vehicle and the size of the dog would dictate whether or not those things are a search. Becky is small. So anytime she searches, she's often trying to get up. So she jumps a lot. But conversely, a large dog with a low vehicle might rub against the doors, the wheel wells, or even the underside of the frame in the course of trying to go to source. And that's what all of the experts here agreed drug dogs are properly trained to do. They're trained to try to reach the strongest source of the odor. And in doing so, sometimes they touch things. Now, in construing any touch by a drug dog as a Fourth Amendment trespass, I think also it's important to think about what that looks like when we would infer that same rule to a police officer. The Sixth Circuit makes the point that a police officer is entitled to look through an open window. If he presses his nose on the window when he does so, now it's a Jones trespass and we can't do that. That seems similarly absurd. And I think that the point is also illustrated by this thing about scratching the car. First of all, we dispute that the car was actually scratched. We don't dispute that it was touched. But that would be a Fourth Amendment problem that on these facts would be solved with rubber booties. That seems like an odd place to draw the line for the Fourth Amendment. And I think that the Sixth Circuit dealt with this well when it talked about the purpose of the touch itself. The dog doesn't actually gain information just through the touch. Now, sure, she gets up higher, but the touch itself, she has no sensors in her paws. And furthermore, you have drug dogs who do things like press their nose to the seam of the car. If it's just the touch, then that too would be a Fourth Amendment trespass. But we're not going to be writing a rule that says, that sets down a standard when it's incidental and when it's intrusive. That's the job of the district judge, isn't it? To listen to the evidence and say, that was incidental. Or in another case, that was intrusive. That's the district court's job, isn't it? Not ours. Yeah, and I think that if the district court had gotten to really judging whether or not the trespass here, may I finish my answer, was some sort of intrusion or invasion as the words of Jones contemplate, then I think that we could be talking about whether factually the trespass did those things. Did the district court just avoid that by saying there was a previous alert? Or did it say there was an intrusion? So what the district court did was found that the dog alerted before she touched the side of the car. So you don't have to reach the Jones issue. And that's what the district court did, did not address the issue. The district court did address the trespass issue, even though it did not have to. Frankly, I think because the judge was sort of offended that the drug dog jumps on cars. But the point here being is that if you reach the trespass issue, the district court didn't really get down to whether or not Becky's intrusion or occupation of the vehicle facilitated the search. Just that it was in the course of the search was enough for the district court. And I don't think that's enough for all of the reasons that the Sixth Circuit said in Felney. What if the dog was placed on the roof of the car or the bed of a pickup? Now, if you have the officer, you know, actually doing that, I think that's where we can fall back to this circuit's well-established precedent about the actions of drug dogs and how they're facilitated by officers by things like opening the back of the hatchback of a car, leaving a door open. I think the back end of a truck is maybe a closer question. Like, I think the dog would probably need to leap up into that on its own, following its nose, rather being placed there by the officer for it to be acceptable under this court's existing precedent. And that's part of why I think it makes sense here to categorize the Jones issue in terms of harmonizing it with this court's existing precedent on the behavior of drug dogs and that line between the officer's facilitation, things like manipulating the car, and the drug dog following its nose. All right. Thank you. Thank you. Time's expired. Have some rebuttal. I'm going to make a couple points about the trespass issue. Jones has made clear that only three things are required, constitutionally protected effect, a touching, and that being made for the purpose of gaining information. All three things are met here, and the district court did actually find that she jumped up on the car in order to get information. That was a finding the district court made, and she, in fact, got information from that. So the government's argument that it didn't make that finding is incorrect. But Jones and Hardines make clear that it doesn't have to be a substantial touching. The dog walking on the cartilage in Hardines was enough. And this idea that the paws have to communicate the information is not in Jones, and it's definitely not in Hardines. In Hardines, the dog's paws weren't containing, weren't conveying the information when it was walking on the cartilage. It was trespassing in order to get information from its nose. So that's what matters. It's not whether the paws convey information. And the same was true in Jones. It wasn't the attachment to the car that conveyed information. It was, you know, the digital device transmitting it back to the officers about the movements. But the trespass was the attachment. So the Felmy court was incorrect, and the government is definitely incorrect on that point. So the idea, too, that the dog, you know, the touching could be, this would be very difficult or irrational to administer. It's not. If the dog touches the car while it's doing its sniff and it's trying to get information from doing that, it's a search under Jones. It's not really very hard. The dog can't touch the car. If the dog jumps into the bed of the trailer, it has trespassed, and that's a search, whether the officer puts it there or not. And to be clear, this court has never addressed Jones in this context, and none of its cases on that stone line of cases address this test. They address the reasonable expectation of privacy test, not this question. One last thought on Archibias' argument. Whether something is a search is different from whether there is probable cause. Searches turn on capability. Probable cause turns on probability. So the reliability questions and the error rates do not bear on the search question. And for this, we'd ask you to reverse. Thank you. Thank you, counsel. Appreciate your stamina. You're excused. You're not doing the next case, are you? Case is submitted.